Last argument on today's calendar, that's Sutton v. Marie and Tapscott. Ms. Noble, you have reserved two minutes of rebuttal time. So that gives you eight minutes to start and you may proceed. May it please the Court, my name is Ellen Noble and I'm counsel for Plaintiff Appellant Carrie Sutton. New York's Child Victims Act created a two-year window in which plaintiffs could bring otherwise time-barred claims that arise from the sexual abuse they suffered as children. This appeal is about whether the Child Victims Act applies where the plaintiff was a New outside of New York. A New York appellate court decision squarely addresses this question and that case is effectively binding on this Court. You're talking about Shapiro? Yes, Your Honor. Okay. And that was decided just a few weeks before the federal case that's on appeal was decided. But the New York Court of Appeals has not weighed in on this yet. That's correct. But this Court has said repeatedly that it will defer to and that intermediate appellate court decisions are effectively binding on this Court, absent some persuasive evidence that we think the Court of Appeals would reach a different conclusion. And that usually is a divergence of authority in the New York courts, which we don't have here, or some strong textualist argument to the contrary, which again, we don't have here. Well, the rationale adopted in S.H. v. Diocese of Brooklyn seems somewhat in tension with Shapiro. And it seems to me that there's still an open question about how to reconcile the borrowing statute with the statute of limitations of the CDA with regard to current residency, residency at the time of conduct, where the primary conduct took place here, where Ms. Shapiro's conduct took place with respect, and its relation to the primary abuse, and so on. And so I find the statutes somewhat oblique. And the legislative statement that they're intended to protect residents of New York, also a little uncertain about how to line those up. So it seems to me that certification is appropriate here. You don't see enough of a question to require certification to the New York Court of Appeals? No, Your Honor. And here's why. There's a longstanding, well-established common law rule in New York that when a case is brought in New York, New York procedural law, including New York's statute of limitations, applies, regardless of where the claim arises. Now, there's a statutory exception to that common law rule, and that's New York's borrowing statute. But every case in New York agrees that the borrowing statute only applies to non-residents. And every case agrees that you look at whether or not they were a resident at the time the claim accrued. Here, because the complaint plainly alleges that Ms. Simon was a New York resident at the time the claim accrued, when she was sexually abused, the borrowing statute does not apply. Could you just speak to that a little bit, this question of the allegation that she was a New York resident at the time of the accrual of these claims? The standards for finding residency talk about someone having a significant connection to the state and as a result of living there for some period of time. Explain to me how the allegations here suggest that, support the residency. Your Honor, there are allegations in the complaint that I will highlight for you that support that. But I just want to mention as a threshold matter that Ms. Sutton did not even need to address. So timeliness is an affirmative defense and a plaintiff is not required to plead allegations in the complaint in anticipation of an affirmative defense. So as a threshold matter, that's not even required. Nonetheless, the complaint certainly alleges as much. You can look to JA 7, or JA 8, paragraph 7, where the complaint alleges that she moved to New York to start a new life. JA 7, paragraph 3, says that New York was her residence. And then I think of in particular importance is JA 18, paragraph 5, which says that she lived there for several months before she left for Paris on a short-term tourist visa and that she intended to return to live in New York. But is that, I mean, the things that you're addressing all suggest, go to issues of intent. Is it enough if someone says, I intend to live in New York, I intend for this trip out of the country to be temporary, I intend to have a future there, is that enough to establish residency? And how does that, I mean, it seems like there has to be some more, some standard. And if the standard talks about a significant connection to the state, the fact that someone has states an intention to make that their home, is that enough? So the case law has said that that is a factor in favor of finding residence. So as you noted, the standard is just living there for some length of time during the course of a year. And having a significant connection to the state. I think the significant connection comes from, one, the fact that she viewed it as home, that she was starting a new life there. And then second, there are cases like Allen v. Hanser where they talk about, to recognize the degree of permanency, you can look to intent to return to that as a factor in viewing residency under the barring statute. But I guess the bottom line is that the district court did none of this, didn't look to the barring statute, didn't make a determination based on residency. The district court was focused exclusively on the statute and said it doesn't pertain to sexual misconduct that takes place outside of New York. That's correct. So these other issues could be sorted out. I mean, you may have to argue them if we were to agree with you today. But that's not today's problem. I think that's absolutely correct. So New York courts, including the New York Court of Appeals, has said that whether or not there's a barring statute is a question of fact. The cases my opposing counsel cites are cases decided on a motion for summary judgment. There's allegations in the complaint that they were a resident at the time, that's sufficient. To your point, in thinking about the conduct, we have two different kinds of conduct here with the two different defendants. Is it always in the 214G the abusive conduct that we should be focusing on or is it at all relevant where the conspiratorial conduct or other abetting kind of conduct occurred? So for purposes of determining where a claim accrues, which is what a barring statute asks, you look to where that individual was injured. That's very well established under New York law, or when that individual was injured. And that's when their claim accrued. So you would look to whether or not they were a resident at the time that Ms. Sutton was raped in Paris. So the injury is the actual abuse and that's what we focus on as opposed to anything having to do with where the aiding and abetting occurred? Just for purposes of determining when the claim accrued, that's all you focus on. Of course, under New York courts of law principles, you would, of course, look to where the wrongful conduct occurred. But that's a separate question unrelated to interpreting the barring statute. To get to Your Honor's point regarding whether or not the district court's decision, which is actually at issue here, the district court held that there had to be an underlying penal law violation for the statute to apply. The SH case didn't say that. So I think it's been suggested there was some tension between SH and Shapiro. But the only tension is one involved a resident and one involved a non-resident, right? Correct. I think they're entirely consistent. And in SH, on appeal, the court expressly rejected the argument that the district court relied on, that the territorial limits of the criminal law in New York would in any way limit the application of the Child Victims Act. Yeah, the parenthetical in the decision of the district court with respect to SH, and there's no analysis, it's just a cite, is CVA does not apply to extraterritorial conduct based on plain text and legislative history. That doesn't really explain what was going on in SH. SH is about whether or not the barring statute kills the claim of somebody who's a non-resident and the negligence was in New York, but the claim accrued in Massachusetts, is that one? Or is that Florida? I forget in the States. And so that's all it's saying is that the barring statute ended up being fatal in that case. Because I think it was Massachusetts doesn't have a comparable CVA. Correct. So SH involved a non-resident whose claim accrued outside of New York. And the court correctly held on appeal that the barring statute still applies. That analysis has no bearing in a case where there are allegations in the complaint that they are a New York resident. So looking at the legislative history of 214G, the notes say the legislation would open the doors of justice to the thousands of survivors of child sexual abuse in New York State by prospectively extending the statute of limitations. They were going to protect New York as one of the worst states in the nation for survivors of child sexual abuse. So you're saying that the legislature was focused on those people who were residents at the time of the abuse, no matter when it happened, where they are now, where the abuse happened. So if you were abused elsewhere and now live in some other state, but at the time you were a resident of New York State, you can come back here and take advantage of this act. Is that right? Absolutely. And the reason for that, Your Honor, is because it's an undeniable principle that claims that accrue in favor of a New York resident are governed by New York statute of limitations. So those individuals would have been subject to New York's oppressively short statute of limitations. And that's exactly what the statute was designed to fix, New York's oppressively short statute of limitations. So there's no reason there would be further carve-outs. That's the problem that they were trying to fix. And that problem is addressed when you apply it to individuals who are residents at the time their claims occurred. And current residency is irrelevant. It's irrelevant for purposes of the borrowing statute, correct? Well, has any case dealt with whether or not how this applies to somebody who was a resident at the time of the accrual of the claim, but has not been a resident for 20 years since? Yes. Well, all the cases, so Bessar, for example, is a case that they make very clear that the only inquiry is whether or not they were a resident at the time. That is the only inquiry. Well, wait. Is that a CBA case? No. But the other CBA... No. So the issue is, does... I mean, an issue. It's not one that was raised at all below. But is there an issue as to whether or not this, the CBA looks to the resident's status for purposes of determining the statute of limitations, looks to the resident's status of the person at the time the claim accrued, or at the time that a person is bringing an action now? I think it would be strange, Your Honor, given that the Child Victims Act doesn't purport to change the borrowing statute at all, and the borrowing statute has been well-established to say you have to look at the resident's status when the claim accrued. I don't think anything about the Child Victim Act changed that analysis, nor would it make sense to do it. No, although I think, you know, interestingly, I think in other contexts, people have suggested that this maybe says that the borrowing statute shouldn't apply even for non-residents. That was rejected, I think, in SH. But an argument could be made and has been made that this CBA is designed to extend the statute of limitations even for non-residents. You're not arguing that. No, and we don't need to because, again, the complaint alleges that Ms. Sutton was a New York appellate. Okay, but if it turns out she's not, then she's out of luck, would you say that? With respect to this statute, yes. So as noted, there's two New York appellate courts that have rejected the argument that was the basis of the district court's decision that there needed to be any underlying violation of New York penal law, and those decisions are effectively binding on this court and also consistent with the text of the statute, which simply cites penal law to describe the conduct that needs to have occurred and does not require there to be an underlying violation of that New York penal law. Further, I would note that in addition to reversing the district court's timeliness holding, this court should also make sure to reverse the district court's dismissals of claims against Marie for lack of personal jurisdiction. As explained in the opening brief, unlike subject matter jurisdiction, there is no obligation for plaintiffs to allege in the complaint personal jurisdiction over each defendant. And indeed, under New York law, personal jurisdiction is a waivable defense. So the court erred in sua sponte, raising personal jurisdiction, giving no opportunity for Ms. Sutton to present facts or present claims that there is personal jurisdiction over Marie. Well, that's two different things. I mean, the fact that it's a waivable defense doesn't seem to me to preclude a court from sua sponte making a motion. I think what you're really saying is that you should have had an opportunity to respond to it, that you shouldn't have lost based on pleadings when the pleadings are not the whole story for a personal jurisdiction argument. I think that's fair, Your Honor. I think the case law talks about how the event that triggers the plaintiff's obligation to make a prima facie showing of personal jurisdiction is a motion to dismiss for lack of personal jurisdiction. But are you saying a court couldn't raise that on its own? I think because it's a waivable, like, I think that Marie should have the, like, if Marie wanted to have this case heard, right, if it's a waivable defense, that would be an  But I think you're right, Your Honor, that the primary concern here is just not giving them an opportunity to make any allegations regarding personal jurisdiction. And as explained in the brief, there are grounds for asserting personal jurisdiction over Marie. But of course, this court doesn't need to reach that here. Finally, defendant asked this court to affirm an alternative grounds, claiming that Sutton failed to state a claim against Tepscott. It's not typical for an appellate court to address these issues in the first instance. But regardless, Ms. Sutton has adequately alleged a negligence, a fraudulent inducement, and an intentional infliction of emotional distress claim against Tepscott. Again, at the motion to dismiss stage, this court needs to draw all reasonable inferences in plaintiff's favor. In doing so, the complaint includes numerous allegations that Tepscott not only should have known, but did know that Sutton was going to be sexually abused by Marie. But the fraudulent inducement is the one that I think is curious, because usually fraud is about property. I duped you, and I took your property, and then you're entitled to your property back. You're arguing that fraud resulted in, effectively, this tort related to the sexual misconduct. That's not usually how we do fraud cases. Fraudulent, I mean, do you have any cases that talk about fraud and where the damages are about the physical or the psychological harms that came as a result of what someone ended up doing? Your Honor, I don't have a case in front of me, but I think the standard would certainly encompass situations where somebody uses fraud to put somebody in a dangerous situation or in a tort context. The standard only requires that there needs to be an omission or material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, and that justifiable reliance on that representation led to the damages. And that's true here, because as outlined in JA8 and JA17, Ms. Tepscott made specific representations that she was going to Paris to advance her career. She omitted the fact that Marie was a known child predator and sent a 17-year-old child overseas to be repeatedly raped by Marie. So that fraudulent inducement claim is sufficient, but none of this was addressed below, right? Correct. So there might be arguments, but negligence is pretty standard, right? You negligently hired somebody, you negligently made someone a coach, and then allowed them to take kids on an overnight trip out of state where something happened. That's a pretty standard negligence claim involving sexual misconduct. You're right, Your Honor, and I think Lisa v. Manacas is a New York appellate case that's directly on point here where adults were supervising a child and had them stay in a room with a relative that they knew had engaged in sexual misconduct in the past, and the court held that that was sufficient to allege a breach of their duty of care owed to that minor. All right. Well, we've gone, my goodness, we've gone way over the top. All right. Well, you've reserved some time for rebuttal, Ms. Noble. Yes. Mr. Devanzo, am I pronouncing that right? Yes, Your Honor. So, sorry that we went over. If you need extra time, obviously, we'll cut you some slack. Thank you. I appreciate it. And I am, may it please the Court, I am Joseph Devanzo of the firm of Pashman, Stein, Walter Hayden. PC, I represent the defendant appellee, Trudy Tapscott. There is no dispute that if the plaintiff is not a resident of New York, her claim is barred by the Borrowing Statute. Not a resident of New York at the time the abuse occurred. Exactly. And you're saying that the allegations are insufficient to establish residency. Yes, Your Honor. I am. In fact, the complaint alleges facts that support that she is not a New York resident. She was a California resident for years. She signed with a modeling agency in San Francisco. She was then flown to New York to be with the League. Does it allege that she was homeless at the time that she was approached and brought to New York? Yes. But she was in California for many years. If she had any connection with the state, it was California. She then ... I'm sorry to interrupt you, Mr. Devanzo, but none of this was part of the inquiry or analysis by the District Court, right? It was part of our brief below, and so it is. That may be. But I'm saying normally, residency is not something that has to be pleaded in a complaint, right? Well, I would beg to differ for a couple of reasons. One is that in the pre-motion correspondence that we submitted to the District Court, we raised the fact of the non-residency in the borrowing statute as a bar to this lawsuit and the CVA not applying. And so when the court gave the plaintiff one last time to amend her complaint, she knew that that was an issue. Secondly, the federal pleading requirements are higher than the pleading requirements in state court. Here you have to set forth a plausible claim under federal pleading rules. And certainly, in order to apply the extraordinary revival statute of the Child Victim Act in the face of somebody challenging its application to someone as being a non-resident, you would think that there would be changes, and they did make changes. Instead of saying that she was only in New York for a short period of time before going to Paris, they amended their complaint to include this intent to make it her home and Right. So why isn't that enough? If I move to New York from California and I'm here for five months and then I get a You're saying that that's not enough to establish I'm a New York resident? No, it's not, because the short period of time in which she was here, she did not rent any property. She did not. She was 17. I understand that. But these are the facts that we have. And in fact, after Paris. We have allegations that we're entitled to assess to find whether they're plausible or not. Yes. And I think that we owe a generous interpretation to the residency allegations. I'm not sure that they're even looking at them generously under New York law. They are insufficient to make a contact with New York to make it her residence. And we've cited the cases, the leading cases, the New York Court of Appeals case of Antoni against General Motors. And also we cited a New York Supreme Court case in Allen and then the Northern District of New York case of, forgive me, but Afanasyava in which that was a 12B6 motion. And the allegations of contact with the state were much greater than the fleeting contact that Ms. Sutton had with New York. And yet it was still dismissed for failure to establish residency. Well, can I just interrupt you for a second and ask, so do you not intend to defend the opinion of the district court here? No, I do. Oh, you do? I've just been answering Your Honor's questions. Oh, I thought out of the gate it seems like you're asking us to affirm on a different grounds. Well, I think this court can affirm on any grounds that are supported in the letter. We clearly can. And sometimes we even do. But what we have before us is a written opinion of a district court that they're disagreeing with. And so you're saying that this was the correct application and interpretation of the CBA? I am defending the district court's opinion. I believe it is correct and I'm happy to speak to that. But I did want to address some of the things that my colleague had raised in her argument saying that she didn't have an obligation to plead sufficient facts of residency in order to apply the CBA and avoid the application of the borrowing statute. And I think just one last point on that. If you look at Shapiro, you will see that Shapiro even agrees with my client's position in which it says that the plaintiff was required to plead factual allegations related to his lack of consent in order to assert an offense under the penal law, Article 130, and for the claims in the amended complaint to thereby be revived under CPLR 214G of the statute of limitations. My point is that... What does that have to do with residence? Because my point, and it will tie into my defense of the district court's decision, is that this is a unusual statute of limitations. It is one in which you get to revive a long-since, untimely claim... I think we get all that. We don't need to hear what it is. But you need to be able to plead conduct which would constitute a sexual offense. So you're saying there have to be more comprehensive statements of residency before you get past a motion to dismiss. Yes. Residency. Is that what you're saying? Yes. So assuming... Maybe we could just move past that for a minute since the time is passing. So assume for a moment that we disagree with you about the sufficiency of the residency allegations. You just mentioned Shapiro. Shapiro found that a New York resident or two New York residents who alleged sexual abuse that occurred outside of New York could proceed under the statute. Why doesn't that govern here? Because I think Shapiro is wrongly decided. Well, is it inconsistent with SH, the Diocese of Brooklyn? SH... It's a different scenario, but do you think that the holding and the reasoning of SH are different? An intention with the Shapiro case? No. SH in dicta talked about how you did not need to assert a sexual offense that could be prosecuted in New York and so it could apply to sexual abuses or rapes that occurred outside of New York. That was in dicta because the plaintiff was a Florida resident and also the, I think the sexual abuse occurred in Florida. So Shapiro picked up that dicta and without any analysis just cited to that appellate decision in support of upholding the New York residents' claims where they were sexually abused, I believe it was in Massachusetts. What I'm saying is that if you look at the New York Court of Appeals case regarding how you interpret statutes, you do not read into a statute its extraterritorial effect. Moreover, this is a revival statute and as a result, it's supposed to be narrowly construed. Right, but it's not reviving criminal claims that occurred other places and it's not applying this extended statute of limitations with respect to crimes other places. What it's saying is that any claim involving intentional or negligent acts that were committed leading to injuries that are a result of conduct that took place perhaps someplace else, those things get revived. And so I'm trying to figure out why you think that this statute was designed to extend the statute of limitations for a kid who went on a school trip overnight to Saratoga and was abused by a coach, but not to a kid who was taken to Jersey City for a school trip and was abused. Correct. And what in the language of this statute do you look to to make that distinction? Well, what I see is an absence of anything in the statute that indicates that it would have extraterritorial effect. So let's look at... But, I mean, if this happened today, are you saying that a person, a New York resident would not have a cause of action for negligence against a principal or an administrator who put him on a school trip and on a bus that got them abused in Jersey City for someone that the administrator knew to be a pedophile? No, because it would be a timely claim, Judge. Well, it wouldn't have to be revived. All I'm saying is that the purpose of the statute was to deal with the situation in which New York, whose statute of limitations... It doesn't limit itself to New York residents, and it doesn't limit itself, I mean, it doesn't limit causes of action. It seems to me it says any cause of action that could have been brought within three years now can be brought within a much longer time period if it relates to sexual abuse. Doesn't it say that? No, it says that you can revive it, and the window of opportunity for reviving that statute was six months after its passage and a year and six months from its passage. So there was a limited window in which you could bring that. OK. So the only time you could bring such a claim is if you, if it was revived as defined by the statute. And the statute, the statute attempted to take care of the following problem, which is that New York has a very harsh statute of limitations. I did a survey one time in connection to one of my mass tort cases. Virginia probably is the only state that has a harsher statute of limitations than New York. So what happens is you have a harsh statute of limitations that expires quickly before these poor victims can... And we get all that. You're making a distinction between the poor victim who gets abused in Saratoga and the poor victim who gets abused in Jersey City. That's... Why? Why did the legislature want to do that? Because for purposes of statute of limitations, the worst case scenario is for a New York resident who gets raped or sexually abused here in New York. If they get abused somewhere else, they can bring the lawsuit in the other jurisdiction and have that other statute of limitations apply. You can't do that if you're a New York resident and you're raped here in New York. You have the worst possible situation for yourself. And so the statute itself takes care of that problem by only reviving those claims in which it could have been a prosecuted crime here within New York. It doesn't say that at all. It says... It says that by... Where the injury was suffered as a result of conduct which would constitute a sexual offense. In other words, the sexual offense, which is defined by New York statute, defines the range of activities. If you didn't do that, you might have a vague statute. But it doesn't say that it had to be a prosecutable offense in New York, does it? It does by using the phrase conduct which would constitute a sexual offense defined in article 130 of the penal law. That phrase, conduct which would constitute a sexual offense, is a term of art that's used in the penal law to indicate an offense that can be prosecuted. And so when they say that, that's what they're talking about. They're talking about it had to be something that could be prosecuted here in New York, but for the passage of the statute of limitations, you would have been able to bring a claim against this individual for damages. Okay, but so that would then, again, suggest that New York doesn't really care as much about residents who are abused out of the state, right? If that's the consequence... I think that's what you said before. Yeah, yeah. If that's... I'm not saying that the legislature consciously decided that. I'm saying that when the legislature enacted this, this is the limitation that they put in there. It may have been an unintended consequence, but that's exactly what this says. Which is that it has to be conduct that constitutes a sexual offense under Article 130. Why isn't that just a description of the type of conduct, rather than a signal that it had to be prosecutable in New York? Because there would have been easier ways to write the statute. You could just say, conduct which is described in, or conduct that was defined in, or any kind of sexual abuse, sexual assault, or rape that occurs to an individual who is under 18 years of age. You didn't have to use that particular phrase, which is conduct which would constitute an offense under Article 130. That is a term of art that indicates... But it does not say conduct that would have been prosecuted or could have been prosecuted in New York under these sections either, does it? Well, if you look at the penal law, that's exactly what it says. Because the penal law talks about prosecutable crimes, and when you can and cannot prosecute... Can I ask you, has any court adopted the interpretation you've just articulated? Yes. Who? The district court. Okay, well... Not just one district... I think that was implied in the question, but maybe not. There are two. There are two district court opinions. The other one was the one that first cited S.H., hold on a minute. Holloway? Is that what you're talking about? Yes, Holloway. So Holloway decided it that way, and so did the district court in this case. And by the way, they follow New York's statutory interpretation rules, the plain language of the statute, and also they don't try and legislate something beyond what is stated in the statute. Let me ask you then this, Mr. DiVanzo. You're suggesting that we should issue an opinion that effectively overrules or at least rejects the two New York appellate division cases that have addressed this issue squarely. Yes. We shouldn't certify it. We shouldn't let the New York Court of Appeals do that. We should do it ourselves. The wiser move would have to be to have the Court of Appeals decide the issue, Judge. Okay. Maybe we'll end on that note. We've gone over, but is there anything else that we missed? We're getting our money's worth today across the board. Judge, there is a lot that I could talk about with respect to the CBA. I have no doubt. I would just ask, Your Honor, that I would read those appellate division decisions carefully. They are flawed, and you should not follow them. Good advice. Okay. Thank you. All right. Ms. Noble, you've got two minutes for a rebuttal, more or less, but don't assume it will be long. Thank you. First, on the issue of residency, I'll just restate that there's no need to plead facts in anticipation of an affirmative defense, which is what this is. And even if there was a need to plead the elements of the revival provision, that doesn't require pleading of residency. That's a separate argument that's being made, saying French law applies. There was no need to anticipate that affirmative defense in the complaint. But regardless, there are clear allegations in the complaint, multiple allegations, about why this was a residency, why it was meaningful and significant in her life, and why she intended to return to New York. Well, do you envision this being anything more than a pleading issue? If you win, it goes back down. Are you envisioning that there's going to be a factual hearing or affidavits, witnesses related to residency? That can all happen on a motion for summary judgment if it continues to get challenged. Second, opposing counsel talks about how you can't read into the statute its extraterritorial effect. But just to be clear, this argument doesn't make sense because it's a procedural statute. It's not a cause of action that regulates conduct. That's like saying New York's choice of law rule shouldn't apply to a case where the claim accrued outside of New York. That's just false. If a case is brought in New York, New York procedural law, including New York's personal jurisdiction law or choice of law rules, apply. The same is true here. And this goes to the issue of the purpose of the statute, which is to respond to harsh statute of limitations in New York. You talked about how there could be two scenarios where someone sexually abused outside of New York on a school field trip or inside New York on a school field trip. In both of those cases, New York statute of limitations would apply. The very statute of limitations that this statute was trying to address. That's why it doesn't make any sense to distinguish in those two circumstances. And partly because the borrowing statute. The borrowing statute wouldn't apply in those circumstances. New York precedent, right? Yes, exactly. And finally, I also think it's worth noting that this court really doesn't need to certify this issue because the law is clear. Ms. Sutton has already waited 30 years to get accountability in this case. And this court has said that it should not certify. Certification shouldn't be a device for shifting the burdens of this court to those whose burdens are at least as great. Do you think they're as great? I don't know. And that certification generally requires a split of authority on the issue presented. Nothing like that here. A state statute whose plain language doesn't indicate the answer. Not here. Or a complex question of state common law. None of that exists here. And finally, on the question of whether or not there needs to be an underlying violation of penal law, opposing counsel cites Holloway. Holloway had a footnote that addressed that. And it cited directly to the Supreme Court decision in SH. All sources lead back to that Supreme Court decision in SH. That argument was directly rejected on appeal by the appellate court in SH. There's no other source for that argument. Appellate courts are in agreement. And there's no reason to continue to delay justice for Ms. Sutton. All right. Well, it's been a long morning. Now afternoon. I want to thank you both. Very well argued. Interesting case. So we will reserve decision. That concludes our arguments on the calendar today. I want to thank our courtroom deputy.